IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| APPLEBEE'S FRANCHISOR LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WILLIAM J. GEORGAS; WILLIAM J. GEORGAS, IN HIS CAPACITY AS TRUSTEE OF THE WJG REVOCABLE TRUST DATED JULY 7, 2020; STEVEN B. STEINMETZ, IN HIS CAPACITY AS TRUSTEE OF THE SOPHIA K. GEORGAS 2020 IRREVOCABLE TRUST DATED DECEMBER 22, 2020; and STEVEN B. STEINMETZ, IN HIS CAPACITY AS TRUSTEE OF THE JOHN W. GEORGAS 2020 IRREVOCABLE TRUST DATED DECEMBER 22, 2020, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ |
| Defendants. | ) |

## COMPLAINT

Plaintiff Applebee's Franchisor LLC ("*Applebee's*"), by and through the undersigned counsel, and for its Complaint against Defendants William J. Georgas ("*Georgas*"), individually; William G. Georgas, in his capacity as Trustee of the WJG Revocable Trust dated July 7, 2020 ("*WJG Trust*"); Steven B. Steinmetz, in his capacity as Trustee of the Sophia K. Georgas 2020 Irrevocable Trust dated December 22, 2020 ("*Sophia Georgas Trust*"); and Steven B. Steinmetz, in his capacity as Trustee of the John W. Georgas 2020 Irrevocable Trust dated December 22, 2020 ("*John Georgas Trust*," and together with Georgas, WJG Trust, and Sophia Georgas Trust, collectively, the "*Guarantors*" or "*Defendants*"), alleges as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. This breach-of-contract action arises from the wholesale breaches by Apple Central KC, LLC ("*Franchisee*" or "*Apple Central*") and its principal, William J. Georgas, of franchise

agreements and lease assignments with Applebee's, the franchisor of a well-known casual dining restaurant chain known as Applebee's Neighborhood Grill & Bar®. Pursuant to the franchise agreements, Franchisee operated the following eight restaurants in the Kansas City area: (1) 9300 East 350 Highway, Raytown, MO ("*Raytown Restaurant*"); (2) 11000 Metcalf Avenue, Overland Park, KS ("*Metcalf Restaurant*"); (3) 3404 Rainbow Boulevard, Kansas City, KS; (4) 2912 South Fourth Street, Leavenworth, KS ("*Leavenworth Restaurant*"); (5) 16110 West 135th Street, Olathe, KS ("*Olathe Restaurant*"); (6) 6800 Johnson Drive, Mission, KS ("*Mission Restaurant*"); (7) 1700 Village West Parkway, Kansas City, KS; and (8) 1501 Northeast Douglas Street, Lee's Summit, MO (collectively, the "*Restaurants*").

2. Among other obligations under the franchise agreements, Franchisee was required to operate the Restaurants for a defined and agreed-upon term and to make regular payments to Applebee's for royalties and advertising fees through the entirety of the term.

3. In the franchise agreements and related documents for the Restaurants, the Guarantors, as the ultimate principals of Franchisee, expressly, personally, and unconditionally guaranteed all of Franchisee's financial obligations to Applebee's, including without limitation payment of all rent, royalties, and advertising fees by Franchisee.

4. On October 30, 2024, Franchisee unilaterally closed the Restaurants without Applebee's consent and stopped paying royalties and advertising fees to Applebee's. Through its actions, Franchisee has deprived Applebee's of the central benefit of the franchise agreements: payment of royalties and advertising fees throughout the entire term of the agreements. As a result, Franchisee owes approximately $4,476,600 in future lost royalties and advertising fees.

5. In addition, Applebee's Restaurants Kansas, LLC ("*Applebee's Kansas*") originally leased the properties for the Raytown, Mission, Leavenworth, and Olathe Restaurants from the

respective owners of the real estate. When Franchisee entered into the franchise agreements for those Restaurants, it also took over the leases associated with the Restaurants. Specifically, Franchisee entered into individual lease assignment and assumption agreements ("*Lease Assignment(s)*") with Applebee's Kansas and various Applebee's affiliates for the Raytown, Mission, Leavenworth, and Olathe Restaurants. True and correct copies of the Lease Assignments for the Raytown, Mission, Leavenworth, and Olathe Restaurants are attached hereto as **Exhibits 1**, **2**, **3**, and **4**, respectively.

6. Through the Lease Assignments, Franchisee "assume[d] all obligations [of Applebee's Kansas] under the Lease arising on or after the Effective Date of this Agreement, including but not limited to payment of all rent and other sums due by [Applebee's Kansas] under the Lease and performance of all obligations duties and responsibilities under the Lease" and "agree[d] for the benefit of [Applebee's Kansas] and the landlord under the Lease that [Franchisee] will keep, perform and be bound by all of the terms, covenants and conditions required to be performed by [Applebee's Kansas] under the Lease from and after the Effective Date."

7. In violation of the Lease Assignments, Franchise closed the Leavenworth, Olathe, Mission, and Raytown Restaurants and, on information and belief, failed to make all rent payments to the owners of the real property associated with these Restaurants, rendering Applebee's Kansas liable for roughly $3,600,000 under the original leases.

8. On October 30, 2024, pursuant to Section 19.1(c) of the franchise agreements, Applebee's provided written notice to Defendants that the franchise agreements for the Restaurants were immediately terminated due to Franchisee's unilateral closure of the Restaurants without Applebee's consent.

9. Through their personal guaranty in the Franchise Agreements and related documents, the Guarantors (among other guarantors) are jointly and severally liable for the damages resulting from all of the above-referenced breaches by Franchisee, including, without limitation, lost royalties and advertising fees due to Franchisee's unilateral closure of the Restaurants; outstanding rent payments due under the Lease Assignments; and reimbursement of Applebee's attorneys' fees and litigation expenses.

10. With this action, Applebee's seeks to recover these amounts from Defendants.

## PARTIES

11. Plaintiff Applebee's is a Delaware limited-liability company with its principal place of business in Pasadena, California. The sole member of Applebee's Franchisor is Applebee's Funding LLC, a Delaware limited-liability company with its principal place of business in Pasadena, California. The sole member of Applebee's Funding LLC is Applebee's SPV Guarantor LLC, a Delaware limited-liability company with its principal place of business in Pasadena, California. The sole member of Applebee's SPV Guarantor LLC is Applebee's International, Inc., a Delaware corporation with its principal place of business in Pasadena, California. Thus, for purposes of 28 U.S.C. § 1332, Plaintiff Applebee's Franchisor is a citizen of Delaware and California.

12. Defendant William J. Georgas is a resident and citizen of the State of Connecticut. Georgas may be served with a summons and a copy of this Complaint at the following address: 396 Round Hill Rd., Greenwich, CT 06831-2637.

13. Defendant William G. Georgas, in his capacity as Trustee of the WJG Revocable Trust Dated July 7, 2020, a traditional trust, is a resident and citizen of the State of Connecticut and may be served with a summons and a copy of this Complaint at the following address: 396 Round Hill Rd., Greenwich, CT 06831-2637.

4

14. Defendant Steven B. Steinmetz, in his capacity as Trustee of the Sophia K. Georgas 2020 Irrevocable Trust Dated December 22, 2020, a traditional trust, is a resident and citizen of the State of Connecticut and may be served with a summons and a copy of this Complaint at the following address: 170 Mason Street, Greenwich, CT 06830.

15. Defendant Steven B. Steinmetz, in his capacity as Trustee of the John W. Georgas 2020 Irrevocable Trust Dated December 22, 2020, a traditional trust, is a resident and citizen of the State of Connecticut and may be served with a summons and a copy of this Complaint at the following address: 170 Mason Street, Greenwich, CT 06830.

16. Thus, for purposes of 28 U.S.C. § 1332, no Defendant is a citizen of Delaware or California, and diversity of citizenship exists between Plaintiff, on the one hand, and Defendants, on the other hand.

## JURISDICTION AND VENUE

17. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

18. Venue is proper in this Court because, as more fully detailed below, the parties contractually agreed to this Court as the venue for their disputes and/or a substantial part of the events or omissions giving rise to Applebee's claims occurred in this district.

19. Defendants are subject to personal jurisdiction in this Court, because Defendants (1) as more fully detailed below, consented to personal jurisdiction in this Court; (2) entered into a contract in Kansas and/or with an entity with its principal place of business in Kansas at the time of contracting; (3) entered into a contract that was to be performed, in whole or in part, in Kansas; and (4) otherwise have the necessary minimum contacts with Kansas.

## FACTS COMMON TO ALL COUNTS

20. Applebee's is a franchisor of nationally recognized restaurants known as Applebee's Neighborhood Grill & Bar® restaurants in the bar-and-grill sector of the casual-dining industry.

21. Pursuant to franchise agreements, Applebee's and/or its affiliates grants franchisees the right to operate specific restaurants, provides all necessary intellectual property licenses, and obtains franchisees' agreement to operate the restaurants for a specific, defined term.

22. In exchange for these and other benefits and services, Applebee's receives payments from franchisees principally in the form of monthly royalties based on the restaurants' revenues and advertising fees. The royalties and advertising fees are paid throughout the entire term of the franchise agreements and on a monthly basis and represent the principal consideration from franchisees to Applebee's.

### The Franchise Agreements

23. From approximately 2015 through 2017, Applebee's entered into a franchise agreement with Franchisee for each of the Restaurants (the "*Franchise Agreements*").

24. With exception of the Franchise Agreement for the Metcalf Restaurant (the "*Metcalf Agreement*"), the Franchise Agreements granted Franchisee the right to operate the Restaurants for a full term of 20 years. The Metcalf Agreement granted Franchisee the right to operate the Metcalf Restaurant through November 29, 2027. The relevant provisions of the Franchise Agreements, including those regarding Franchisee's obligation to pay royalties and advertising fees, and Guarantors' guaranty of the same, are identical. A true and correct copy of a representative Franchise Agreement, as amended and with all addenda, is attached hereto as **Exhibit 5**.

25. Under the Franchise Agreements, Franchisee agreed to "operate the Restaurant[s] and perform as required hereunder for the full term of this Agreement." *Id.*, ¶ 1.5.

26. Under the Franchise Agreements, Franchisee agreed to operate the associated Restaurant through the initial term and to pay Applebee's, among other things, a monthly royalty fee based on each calendar month's gross sales. *Id.*, ¶¶ 1.2, 9.1(b) and Exhibit 1 thereto.

27. Under the Franchise Agreements, Franchisee also agreed to pay Applebee's a monthly advertising fee, which, like the royalty fee, was also based on each calendar month's gross sales. *Id.*, ¶¶ 8.2, 9.1(c).

28. Each of the Franchise Agreements expressly incorporate by reference any lease agreement entered into between the Franchisee and Applebee's or its affiliates and expressly deems a breach of the lease to be a breach of the Franchise Agreement entitling Applebee's to collect the damages naturally flowing from the breach of the lease:

> In the event that Franchisor or its affiliates have leased the Restaurant premises to [Apple Central] pursuant to a written lease agreement (the "Lease"), the Lease is hereby incorporated in this Agreement by reference, and any failure on the part of [Apple Central] (Lessee therein) to perform, fulfill or observe any of the covenants, conditions or agreements contained in the Lease shall constitute a material breach of this Agreement.

*Id.*, ¶ 25.4.

29. The Franchise Agreements contain a broad indemnification provision requiring Franchisee to indemnify Applebee's and its affiliates for a wide variety of claims:

> [Apple Central] shall indemnify and hold harmless Franchisor and its officers, directors, employees, agents, affiliates, successors and assigns from and against (a) any and all claims based upon, arising out of, or in any way related to the operation or condition of any part of the Restaurant or Restaurant premises, the conduct of business thereat, the ownership or possession of real or personal property, and any negligent act, misfeasance or nonfeasance by Franchisee or any of its agents, contractors, servants, employees or licensees (including, without limitation, the performance by [Apple Central] of any act required by, or performed pursuant to, any provision of this Agreement), and (b) any and all fees (including reasonable

attorneys' fees), costs, and other expenses incurred by or on behalf of Franchisor in the investigation of or defense against any and all such claims. Without limiting the generality of the foregoing, [Apple Central] will satisfy the obligations set forth in this paragraph without regard to any acts or omissions, real or alleged, of Franchisor or its officers, directors, employees, agents, affiliates, successors and assigns.

*Id.*, ¶ 15.2.

### Guarantors' Personal Guaranty and Other Common Provisions of the Franchise Agreements

30. Under the Franchise Agreements, Georgas (and others) is identified as a "Principal Shareholder" of Franchisee, signed the Franchise Agreements in that capacity, and through the following provision personally and unconditionally guaranteed any and all financial obligations of Franchisee:

[Guarantor], jointly and severally, hereby personally and unconditionally guarantees each of Franchisee's financial obligations to Franchisor (including, but not limited to, all obligations relating to the payment of fees by Franchisee to Franchisor). [Guarantor] agrees that Franchisor may resort to [Guarantor] for payment of any such financial obligation, whether or not Franchisor shall have proceeded against Franchisee, any other Principal Shareholder or any other obligor primarily or secondarily obligated to Franchisor with respect to such financial obligation. [Guarantor] hereby expressly waives presentment, demand, notice of dishonor, protest, and all other notices whatsoever with respect to Franchisor's enforcement of this guaranty. In addition, [Guarantor] agrees that if the performance or observance by Franchisee of any term or provision hereof is waived or the time of performance thereof extended by Franchisor, or payment of any such financial obligation is accelerated in accordance with any agreement between Franchisor and any party liable in respect thereto or extended or renewed, in whole or in part, all as Franchisor may determine, whether or not notice to or consent by any Principal Shareholder or any other party liable in respect to such financial obligations is given or obtained, such actions shall not affect or alter the guaranty of [Guarantor] described in this Subsection.

Ex. 5, ¶ 11.5 and Summary Pages.

31. For the Metcalf Agreement, through an Amendment to Franchise Agreement dated May 31, 2022, WJG Trust, Sophia Georgas Trust, and John Georgas Trust agreed that they were also "Principal Shareholders" under the Metcalf Agreement and each "ratifie[d] and reaffirm[ed]

all terms and conditions set forth in the [Metcalf Agreement] as amended hereby," which included the personal and unconditional guaranty in Section 11.5 of the Metcalf Agreement.

32. According to the guarantees from Guarantors, Applebee's is not required to seek recourse against Franchisee before seeking payment from Guarantors.

33. In the Franchise Agreements, Defendants agreed to a choice-of-law provision in favor of Kansas law, as well as to submit to this Court's jurisdiction for any dispute relating to the Franchise Agreements. Ex. 5., ¶¶ 21.2, 21.3.

34. Under the Franchise Agreements, Defendants agreed that the prevailing party in any legal proceeding to enforce the provisions of the Franchise Agreement shall be paid its reasonable attorneys' fees and expenses by the other party or parties. *Id*., ¶ 19.3.

**The Lease Assignments for the Raytown, Mission, Leavenworth, and Olathe Restaurants**

35. Under the Lease Assignments, Franchisee "assume[d] all obligations [of Applebee's Kansas] under the Lease arising on or after the Effective Date of this Agreement, including but not limited to payment of all rent and other sums due by [Applebee's Kansas] under the Lease and performance of all obligations duties and responsibilities under the Lease" and "agree[d] for the benefit of [Applebee's Kansas] and the landlord under the Lease that [Franchisee] will keep, perform and be bound by all of the terms, covenants and conditions required to be performed by [Applebee's Kansas] under the Lease from and after the Effective Date." Exhibits 1, 2, 3, and 4, ¶ 3.

36. The Lease Assignments were entered into contemporaneous with, and incorporated by reference into, the Franchise Agreements for the Raytown, Mission, Leavenworth, and Olathe

Restaurants and, pursuant to Paragraph 25.4 of the Franchise Agreements, a breach of the Lease Assignments is considered a breach of the Franchise Agreements.

37. Additionally, the Lease Assignments were entered into specifically so that Franchisee could, pursuant to the Franchise Agreements with Applebee's, operate the franchised restaurant and, as a result, were intended to advance the relationship and business arrangement set forth in the Franchise Agreements and benefit Applebee's.

### Franchisee's Improper Closure of the Restaurants and Non-Payment of Royalties, Advertising Fees, and Rent

38. On October 30, 2024, Franchisee unilaterally closed each of the Restaurants without Applebee's consent and prior to the end of the term of the relevant Franchise Agreement and stopped paying royalties and advertising fees due under the Agreements. In doing so, Franchisee breached the Franchise Agreements.

39. Closure of the Leavenworth, Olathe, Mission, and Raytown Restaurants and non-payment of rent and other sums due under the original leases for such Restaurants, constitutes a breach of the associated Lease Assignment and the Franchise Agreement for those Restaurants.

40. More specifically, on October 17, 2024, the landlord for the Raytown Restaurant notified Applebee's that Franchisee was in default of its rent payments ("*Raytown Notice*") and on October 24, 2024, the landlord for the Mission Restaurant notified Applebee's that Franchisee was in default of its rent payments ("*Mission Notice*"). Further, on information and belief, Franchisee has also stopped paying rent for the Leavenworth and Olathe Restaurants. True and correct copies of the Raytown Notice and Mission Notice are attached hereto as **Exhibits 6** and **7,** respectively.

41. Pursuant to the indemnification provisions in the Franchise Agreements, Defendants bear all responsibility and liability for Franchisee's breach of the Lease Assignments and are responsible and are required to indemnify Applebee's and its affiliates for all damages

sought by the owners of the real properties associated with the Raytown, Mission, Leavenworth, and Olathe Restaurants.

42. At no point did Applebee's waive or otherwise consent to Franchisee's unilateral closure of any of the Restaurants, the non-payment of royalties and advertising fees under the Franchise Agreements, or the non-payment of rent pursuant to the Lease Assignments.

43. Franchisee's unilateral closure of the Restaurants and failure to pay royalties, advertising fees and rent related to the Restaurants is a material breach of the Franchise Agreements and Lease Assignments.

44. On October 30, 2024, Applebee's provided notice to Defendants and Franchisee of Franchisee's material breaches of the Franchise Agreements stemming from its closure of the Restaurants and further informed Defendants and Franchisee that Applebee's was terminating the Franchise Agreements effective immediately pursuant to Section 19.1(c) of the Franchise Agreements ("*Notice of Termination*"). A true and correct copy of the Notice of Termination is attached hereto as **Exhibit 8.**

## Applebee's Damages and Defendants' Liability

45. As a result of the Franchisee's breaches, Applebee's has been damaged and suffered lost royalties and advertising fees, incurred liability under the leases for the Restaurants, and incurred attorneys' fees and expenses.

46. Franchisee remains in default of, and Defendants remain liable under, the Franchise Agreements. Franchisee is liable to Applebee's for lost-future royalties and advertising fees through the term of the Franchise Agreements for each of the Restaurants, and is obligated and required to indemnify Applebee's for unpaid or otherwise outstanding rents associated with the

Raytown, Mission, Leavenworth, and Olathe Restaurants and to reimburse Applebee's for its attorneys' fees and expenses. Applebee's damages are approximately $8,076,000.

47. As unconditional guarantors of Franchisee's financial obligations under the Franchise Agreements, Guarantors are jointly and severally liable for all of the above-referenced damages and liabilities.

### COUNTS I-VII
### BREACH OF CONTRACT
### (Franchise Agreements – Georgas)

48. Applebee's incorporates the preceding paragraphs as if fully set forth herein.

49. Each of the seven Franchise Agreements outside of the Metcalf Agreement is a duly executed, valid, and binding contract, supported by sufficient consideration, between Applebee's, Franchisee, and Georgas.

50. Applebee's has performed, or stood willing to perform, all or substantially all of the obligations required of it under the Franchise Agreements, or Applebee's was otherwise excused from such performance.

51. All conditions required by the Franchise Agreements for the Franchisee and Georgas' performance thereunder have occurred or were excused.

52. Franchisee breached the Franchise Agreements by unilaterally closing the Restaurants without Applebee's prior written consent and deprived Applebee's of lost future royalties and advertising fees.

53. Franchisee further breached the Franchise Agreements—which incorporate by reference the Lease Assignments for the Leavenworth, Olathe, Mission, and Raytown Restaurants—by failing to make all required rental payments to the landlords for those restaurants

pursuant to the Lease Assignments and the underlying leases and failing to indemnify Applebee's Kansas for the outstanding rental payments.

54. Georgas, as an unconditional guarantor of Franchisee's financial obligations under the Franchise Agreements, has breached the Franchise Agreements by refusing and/or failing to satisfy Franchisee's financial obligations, including without limitation rent, royalties, and advertising fees owed by Franchisee under the Franchise Agreements.

55. As a direct result of Georgas' breach of the Franchise Agreements, Applebee's has been deprived of the benefits to which it is entitled under the Franchise Agreements and has suffered damages.

56. As a direct and proximate result of the Georgas' breach, Applebee's has incurred harm and suffered damages and will incur future losses.

**COUNTS VIII**
**BREACH OF CONTRACT**
**(Metcalf Agreement – Guarantors)**

57. Applebee's incorporates the preceding paragraphs as if fully set forth herein.

58. The Metcalf Agreement is a duly executed, valid, and binding contract, supported by sufficient consideration, between Applebee's, Franchisee, and Guarantors.

59. Applebee's has performed, or stood willing to perform, all or substantially all of the obligations required of it under the Metcalf Agreement, or Applebee's was otherwise excused from such performance.

60. All conditions required by the Metcalf Agreement for the Guarantors' performance thereunder have occurred or were excused.

61. Franchisee breached the Metcalf Agreement by unilaterally closing the Metcalf Restaurant without Applebee's prior written consent and deprived Applebee's of lost future royalties and advertising fees.

62. Guarantors, as the unconditional guarantors of Franchisee's financial obligations under the Metcalf Agreement, have breached the Metcalf Agreement by refusing and/or failing to satisfy Franchisee's financial obligations, including without limitation rent, royalties, and advertising fees owed by Franchisee under the Metcalf Agreement.

63. As a direct result of the Guarantors' breach of the Metcalf Agreement, Applebee's has been deprived of the benefits to which it is entitled under the Metcalf Agreement and has suffered damages.

64. As a direct and proximate result of the Guarantors' breach, Applebee's has incurred harm and suffered damages and will incur future losses.

WHEREFORE, Applebee's prays that the Court enter judgment in its favor and against Defendants for:

    a. Such damages, to the extent that are recoverable in this action, as Applebee's has sustained and will sustain as a result of Defendants' breaches of the Franchise Agreements;

    b. The costs and expenses incurred in bringing this action, including Applebee's reasonable attorneys' fees;

    c. Pre- and post-judgment interest; and

    d. Such other and further relief as the Court deems appropriate.

## DESIGNATION OF PLACE OF TRIAL

Applebee's designates Kansas City, Kansas as the place of trial.

Date: October 30, 2024

Respectfully submitted,

DENTONS US LLP

By: */s/ Brian P. Baggott*
Brian P. Baggott, KS Bar #26364
Michael P. Pappas, KS Bar #28895
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
brian.baggott@dentons.com
Michael.pappas@dentons.com

and

Joel D. Siegel, CA Bar No. 155581-1991*
601 S. Figueroa Street, Ste. 2500
Los Angeles, California 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: joel.siegel@dentons.com

*to be admitted pro hac vice

ATTORNEYS FOR PLAINTIFF