IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| APPLEBEE'S FRANCHISOR LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24-2497-HLT-BGS |
| ) | |
| WILLIAM J. GEORGAS, individually and in ) | |
| his capacity as Trustee of the WJG Revocable ) | |
| Trust, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER ON
MOTION TO STAY PENDING BANKRUPTCY PROCEEDING**

NOW BEFORE THE COURT is Defendants' "Motion to Stay Case Pending Resolution of Adversary Proceeding in Bankruptcy Court." (Doc. 19.) Therein, Defendants move for a stay of the present case pending resolution of a related litigation currently pending in the Bankruptcy Court of this District. That related litigation involves claims asserted by Plaintiff against Apple Central KC, LLC ("ACKC") (hereinafter "the Bankruptcy case")[1] and by ACKC in an adversary proceeding filed in the Bankruptcy case against Plaintiff (hereinafter "the adversary proceeding").[2] For the reasons set forth herein, Defendants' motion is **GRANTED**.

**FACTUAL BACKGROUND**

**I.    General Case Background.**

Plaintiff is a franchisor of Applebee's restaurants. (Doc. 1, at ¶ 20.) Defendants are William J. Georgas ("Georgas"), individually; William G. Georgas, in his capacity as Trustee of the WJG Revocable Trust dated July 7, 2020 ("WJG Trust"); Steven B. Steinmetz, in his capacity as Trustee of

---

[1] Proof of Claim #20 filed in In re Apple Central KC, LLC, Case No. 24-21427 (Bankr. D. Kan., filed Jan. 8, 2025) (the "Bankruptcy Case") (Doc. 19-1).
[2] In re Apple Central KC, LLC v. Applebee's Franchisor, LLC (In re Apple Central KC, LLC), Adversary No. 25-06002 (Bankr. D. Kan., filed Jan. 13, 2025) (Doc. 19-2).

the Sophia K. Georgas 2020 Irrevocable Trust dated December 22, 2020 ("Sophia Georgas Trust"); and Steven B. Steinmetz, in his capacity as Trustee of the John W. Georgas 2020 Irrevocable Trust dated December 22, 2020 ("John Georgas Trust").  They are hereinafter collectively referred to as "Defendants."

ACKC entered into a number of franchise agreements/lease assignments with Plaintiff for certain Applebee's restaurants in Kansas City.  (*Id.*, at ¶ 23.)  Plaintiff contends that the franchise agreements were signed by Defendant Georgas as a "Principal Shareholder" of ACKC, thereby guaranteeing certain financial obligations of ACKC to Plaintiff. (*Id.*, at ¶ 30.)  Plaintiff further contends that an amendment to the franchise agreement regarding one restaurant was signed by the Trust Defendants as "Principal Shareholders," thus allegedly guaranteeing certain financial obligations of ACKC to Plaintiff as to that sole location.  (*Id.*, at ¶ 31.)

On October 30, 2024, ACKC filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Kansas.  (Case No. 24-21427.)  Also on that day, Plaintiff filed the instant case alleging Defendants are obligated to pay Plaintiff millions of dollars under the franchise agreements and lease agreements. (*Id.*)  Herein, Plaintiff asserts claims for breach of contract against Defendants in their capacity as guarantors of the financial obligations of ACKC under franchise agreements with Plaintiff.

Plaintiff contends that ACKC breached the agreements by unilaterally and improperly closing eight restaurants in October 2024 without the prior, written consent of Plaintiff, which allegedly caused Plaintiff to suffer losses in future royalties and advertising fees as well as to incur liability for rent and other payments under the related lease agreements.  Plaintiff continues that because ACKC's financial obligations were guaranteed by Defendants, including ACKC's indemnification obligation, Plaintiff seeks to recover damages from Defendants, including reasonable attorneys' fees. Defendants have denied Plaintiff's allegations.  Further, Defendants

assert that Plaintiff committed numerous breaches of its obligations under the franchise agreements, which resulted in damages to ACKC and excuse performance by Defendants and ACKC.

Plaintiff filed a Proof of Claim in the Bankruptcy Court against ACKC on January 8, 2025, asserting damages against ACKC based on what Defendants contend are "the very same alleged breaches of the very same franchise agreements and lease assignments for the Applebee's locations that are alleged by [Plaintiff] in this lawsuit." (Doc. 19, at 3 (citing Doc. 19-1.) According to Defendants,

> [t]he amount sought and the underlying factual basis for such amounts asserted by [Plaintiff] against ACKC in the Proof of Claim substantially overlap with the claims asserted by [Plaintiff] in this lawsuit. Compare [Doc. 1] to [Doc. 19-1]. The only difference between the requests for relief sought by [Plaintiff] in the two actions is that [Plaintiff] is in this case seeking to assert damages against the Defendants pursuant to alleged obligations as Principal Shareholders of ACKC (which Plaintiff claims includes a guaranty of certain of ACKC's payment obligations) as opposed to the direct damage claims alleged against ACKC in the Bankruptcy Case.

(Doc. 19, at 3.)

ACKC filed its Complaint against Plaintiff in the Bankruptcy case on January 13, 2025, which commenced the adversary proceeding. (Doc. 19-2.) The adversary proceeding includes claims by ACKC against Plaintiff for breach of contract, breach of the duty of good faith and fair dealing, and to disallow Plaintiff's Proof of Claim. (*Id.*) According to Defendants, ACKC's claims in the adversary proceeding are "substantially similar to the answer and affirmative defenses that Defendants filed in this lawsuit." (Doc. 1 , at 3-4 (comparing Doc. 13 to Doc. 19-2).) Defendants continue that ACKC's claims "are also a core proceeding over which the Bankruptcy Court has jurisdiction to hear and determine." (*Id.*, at 4 (citing 28 U.S.C. § 157(b)(2)(B)-(C) ("Core proceedings include . . . allowance or disallowance of claims against the estate [and] counterclaims by the estate against persons filing claims against the estate")).)

Plaintiff, on the other hand, asserts that "the Adversary Proceeding involves numerous non-core issues, such as breaches of the Franchise Agreements, that bankruptcy courts typically allow to be litigated in appropriate nonbankruptcy forums." (Doc. 23, at 8.)  Plaintiff also argues that Defendants have provided no supporting legal authority for their opinion that the adversary proceeding only involves "core" claims that must be resolved exclusively in the Bankruptcy Court.[3] (*Id.*)

## II.     Motion to Stay.

By way of the current motion, Defendants seek to stay this lawsuit pending the outcome of the related Bankruptcy proceedings.  Defendants generally argue that

> the claims asserted by [Plaintiff] against the Defendants in this lawsuit substantially overlap with the claims asserted by [Plaintiff] against ACKC in the Proof of Claim filed by [Plaintiff] in the Bankruptcy Case and in the Adversary Proceeding filed by ACKC in the Bankruptcy Case and now pending in the Bankruptcy Court and for which the Bankruptcy Court has jurisdiction to hear and determine.  The Defendants in this case cannot be liable to [Plaintiff] unless [Plaintiff] is able to prove the same underlying facts that it must prove to prevail on the Proof of Claim it filed in the Bankruptcy Case, which underlying facts are also at issue in in the Adversary Proceeding in the Bankruptcy Court.

(Doc. 19, at 1.)  Defendants also contend judicial economy would be served by staying the present litigation.

Plaintiff responds that Defendants' motion fails to establish why a stay should be entered and that "[e]very factor relevant to granting a stay … favors denial" of Defendants' motion.  (Doc. 23, at 1.)  Plaintiff argues that the motion constitutes an "improper attempt to bypass the

---

[3] A proceeding is considered to be "core" if the proceeding has no existence outside of bankruptcy.  *In re Dynamic Drywall, Inc.*, No. 14-11131, 2015 WL 4497967, at *3 (Bankr. D. Kan. 2015).  "A proceeding is non-core if it does not invoke any substantive right under federal bankruptcy law and in the absence of bankruptcy, could have been brought in a District Court or state court." *Id.*  The undersigned Magistrate Judge will not make determination of the core issue herein, as the determination is more appropriately decided by the Bankruptcy Court.  *See generally id.* (making a determination as to whether claims are core or non-core).

4

Bankruptcy Court," which Plaintiff contends is "the proper forum" for determining whether this litigation should be stayed. (*Id.*) Plaintiff asserts that Defendants seek this "backdoor relief" herein because "bankruptcy courts consistently refuse to extend the automatic stay to guarantors." (*Id.*) Plaintiff continues that the present case "should not be stayed to allow the Bankruptcy Court, which lacks jurisdiction over [Defendants], to address a narrower set of issues it is not required to resolve and which it can – and should – refer to this Court." (*Id.*, at 1-2.)

Plaintiff also argues that the resulting delay would cause substantial prejudice and undermine its "strong interest in a prompt resolution" of these claims. (*Id.*, at 2.) Plaintiff has requested that this Court "withdraw the reference of the Adversary Proceeding and that the Bankruptcy Court abstain from hearing it," which would result in "the most efficient path forward: consolidation of all issues and parties into a single proceeding before this Court that has actual authority to enter final judgment on the state-law claims." (*Id.*) Plaintiff also contends that Defendants have failed to identify any "legitimate burden" to them or any legitimate public interest in a stay. (*Id.*)

## **LEGAL ANALYSIS**

### I. Bankruptcy Procedure.

All bankruptcy proceedings in the United States District Court for the District of Kansas are referred to Bankruptcy Court by standing order. *See* 28 U.S.C. § 157(a); D. Kan. Rule 83.8.5(a). The referrals may be withdrawn "for cause shown." 28 U.S.C. § 157(d); *see also Rumsey Land Co., LLC v. Resource Land Holdings, LLC*, 944 F.3d 1259, n.4 (10th Cir. 2019). Included in the circumstances providing cause to withdraw a Bankruptcy Court reference is when a claim is triable by jury. *See Disbursing Agent of the Hardesty Estate v. Severson*, 190 B.R. 653, 654 (D. Kan. 1995); *see also* D. Kan. R. 83.8.13(a) ("A district judge shall conduct jury trials in all bankruptcy cases and proceedings in which a party has a right to trial by jury, a jury is timely demanded, and no statement of consent to jury trial before a bankruptcy judge has been filed.").

A motion to transfer must be filed by the party seeking to withdraw a reference. D. Kan. R. 83.8.6(a). "The movant bears the burden to show cause to withdraw the reference." *Redmond v. Tarpenning*, No. 23-2181-TC, 23-2182-TC, 2024 WL 1208854, at *1 (D. Kan. March 21, 2024) (citing *Williamson v. Always Ready, LLC*, No. 2:23-CV-2258, 2023 WL 4838165, at *1 (D. Kan. July 28, 2023)). "The bankruptcy judge then submits a written recommendation, D. Kan. R. 83.8.6(c), and the parties have 14 days to object in writing, Bankr. R. 9033(b). A district judge reviews the written recommendation de novo in resolving the motion to withdraw the reference. Bankr. R. 9033(d)." *Id.* (citing *Steele Cattle, Inc. v. Estate of Crist*, 39 F.3d 1192, 1994 WL 596627 at *3 (10th Cir. 1994) (explaining that Rule 9033 governs how district courts review recommendations in non-core matters).

> When a party moves to withdraw a Bankruptcy Court reference,
>
>> there are typically two practical questions that must be addressed and are frequently the subject of litigation. *See Williamson v. Always Ready, LLC*, No. 2:23-CV-2258, 2023 WL 4838165, at *1 (D. Kan. July 28, 2023). One is whether there is a basis for permitting withdrawal in the first place. *Id.* The other is, assuming withdrawal of the reference is appropriate, when should it occur – either immediately or once discovery-related proceedings have occurred. *See Lindemuth v. Lloyd & Maclaughlin, LLC (In re Lindemuth)*, No. 12-23060, 2022 WL 369413, at *6 (D. Kan. Feb. 8, 2022) (collecting cases explaining that a court has discretion in whether withdrawal should be immediate).
>>
>> … Generally speaking, not every claim made in a bankruptcy court is triable in federal district court. *Id.* Three requirements must be met for a claim to be triable by jury in district court: no statement of consent to trial before a bankruptcy judge has been filed, a jury is timely demanded, and the party requesting trial in district court has a right to trial by jury on the claim. *See generally Disbursing Agent of the Hardesty Estate v. Severson (In re Hardesty)*, 190 B.R. 653, 654 (D. Kan. 1995); see also D. Kan. R. 83.8.13(a).

*Redmond*, 2024 WL 12088754, at *1-2. While these issues will be addressed by the Bankruptcy and District Courts, this procedure provides context for the analysis of the undersigned Magistrate Judge herein.

## II.     Legal Standard for Entering a Stay.

The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  The burden is on the party requesting a stay, who "must make out a clear case of hardship or inequity, if there is even a fair possibility that the stay [will damage another party]." *Spears v. Mid-Am. Waffles, Inc.*, No. 11-2273-CM, 2012 WL 12837278, at *1 (D. Kan. Mar. 8, 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Courts in this District consider five factors when deciding whether to stay pending litigation: "(1) plaintiffs' interests in proceeding expeditiously with the action and the potential prejudice to plaintiffs of a delay; (2) the burden on defendants; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest." *Id.*, at *2 (citing *Klaver Constr. Co. v. Kan. Dep't of Transp.*, No. 99-2510-KHV, 2001 WL 1000679, at *3 (D. Kan. Aug. 23, 2001) and *FDIC v. Renda*, No. 85-2216-EEO, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)). Additionally, the Court "considers whether a stay will avoid confusion and inconsistent results … ." *See Gouger v. Citibank NA*, No. 19-02434-KHV, 2020 WL 1320723, at *2 (D. Kan. March 20, 2020).

## III.    Application of Relevant Legal Factors to Facts.

Defendants argue that each of the above-listed factors weighs in favor of staying this case pending resolution of bankruptcy adversary proceeding, while Plaintiff contends none of the factors supports a stay.  The Court will address the factors in turn.

### A.     Proceeding Expeditiously and Potential Prejudice from Delay.

Defendants argue this factor weighs in favor of a stay because Plaintiff's interest in proceeding expeditiously can be achieved in the Bankruptcy Court, where Plaintiff's proof of claim "alleg[es] substantially the same underlying facts and circumstances alleged here." (Doc. 19, at 6.)

7

Defendants also contend that the litigation will be streamlined in the Bankruptcy Court because Plaintiff can seek discovery directly from ACKC rather than issuing third-party subpoenas as would be necessary herein. (*Id.*)

Further, they argue, the Bankruptcy Court's resolution of claims between Plaintiff and ACKC

> will likely bind both Plaintiff and Defendants in this case. If [Plaintiff's] underlying claim against ACKC is disallowed by the Bankruptcy Court, then [Plaintiff] has no claim against Defendants in this case. If [Plaintiff's] underlying claim is allowed by the Bankruptcy Court, then [Plaintiff] is likely to be able to collaterally estop Defendants from relitigating the merits of [Plaintiff's] claim here that ACKC breached the franchise agreements and suffered damages.

(*Id.*)

Regardless, Defendants argue, the Bankruptcy Court will determine "whether [Plaintiff] owes damages back to ACKC, which would directly impact the amount of damages, if any, the Defendants herein might owe under any alleged guaranties." Defendants contend that the only remaining issue for this Court to decide "is whether the guaranties alleged by [Plaintiff] make Defendants liable for those net damages, if any." (*Id.*)

Plaintiff responds that the present lawsuit "should not be stayed to allow the Bankruptcy Court, which lacks jurisdiction over Guarantors, to address a narrower set of issues it is not required to resolve and which it can – and should – refer to this Court." (Doc. 23, at 8.) Further, "[w]aiting for the Bankruptcy Court to resolve some issues while this case – which covers all issues – remains dormant would cause unnecessary delays and significantly prejudice [Plaintiff]." (*Id.*)

Also to be considered is that a staying of these proceedings would seemingly avoid the risk of potentially inconsistent results between this litigation and the Bankruptcy case. *See Gouger*, 2020 WL 1320723, at *3-4 (granting motion to stay case pending arbitration where "the risk of inconsistent outcomes on the issues of accuracy and damages will be problematic for all parties").

8

Plaintiff counters that such concerns "are mitigated entirely" by Plaintiff's motions in the Bankruptcy case, which "demonstrate the Bankruptcy Court is not the proper forum for resolving the Adversary Proceeding and seek the most efficient and legally sound path forward: consolidation of the Adversary Proceeding with this more comprehensive, first-in-time case, thus eliminating the unfounded concerns raised by Guarantors." (Doc. 23, at 8-9.)

Plaintiff continues that courts have "consistently held that duplicative litigation and inconsistent judgments are an inherent and accepted consequence of bankruptcy law." (Doc. 23, at 9 (citing *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) (holding that "any duplicative or multiple litigation which may occur is a direct byproduct of bankruptcy law. As such the duplication, to the extent it may exist, is congressionally created and sanctioned") and *In re Env't Manucraft Inc.*, 118 B.R. 404, 405 (Bankr. D.S.C. 1989) (holding that "[t]he issue of inconsistent judgments does not apply and that the possibility of multiple judgments is dealt with under provisions of both state and bankruptcy law")). While it is an overstatement to say that Courts have "consistently" come to a particular conclusion while citing only two decades-old, extra-jurisdictional cases, the Court acknowledges that the possibility of inconsistent judgments is, in and of itself, an insufficient reason to stay this case.

Plaintiff also asserts that Defendants' argument "incorrectly focus solely on ACKC's liability under the Franchise Agreements" when this case is not just about that liability but also involves Defendants' alleged breaches of the guaranties. (*Id.*, at 9.) Plaintiff argues that these "independent contractual obligations introduce distinct legal issues" and the "mere fact that another court might address one issue related to Guarantors' ultimate liability does not justify the extreme relief sought by [Defendants]." (*Id.*)

Finally, Plaintiff points out that Defendants have failed to discuss "the significant prejudice [Plaintiff] would face if forced to wait for the Adversary Proceeding's resolution." (Doc. 23, at 9.)

9

According to Plaintiff, staying the present litigation until after the Bankruptcy Court resolves ACKC's potential liability "would undermine" the "express, bargained-for language" of the Guaranties, wherein Defendants agreed Plaintiff "may resort to … any of them … for payment of any such financial obligation, whether or not [Plaintiff] shall have proceeded against [ACKC] … with respect to such financial obligation." (*Id.* (citation omitted).)  Plaintiff asserts that such a delay would "unnecessarily prolong this litigation in favor of awaiting a separate court's adjudication of one issue in this case, running afoul of [Plaintiff's] 'strong interest in moving [its] claims towards a resolution.'"  (*Id.*, (citing *Spears*, 2012 WL 12837278 at *2).)

Given the bankruptcy procedure summarized in Section I, *supra*, the Court finds that judicial economy would be best served by staying this case pending a decision on the request to withdraw the reference to the Bankruptcy Court.  This includes the submission by the Bankruptcy Judge of a written recommendation on the withdrawal of the reference to the Bankruptcy Court pursuant to D. Kan. R. 83.8.6(c) and the potential for the parties to object in writing to that recommendation under Bankr. R. 9033(b).  Thereafter, the District Court will review the written recommendation and resolve the motion to withdraw the bankruptcy reference.  Bankr. R. 9033(d); *see also Steele Cattle, Inc.*, 1994 WL 596627 at *3.  Even though the Court has determined that a stay is appropriate, the Court will address the other factors relevant to deciding whether to enter a stay.

      **B.**      **Potential Burden to Defendants.**

Defendants next argue that if the present matter is not stayed pending resolution of the Bankruptcy case, they "face the possibility of being held liable on a debt that the Bankruptcy Court may ultimately determine does not exist." (Doc. 19, at 7.)  According to Defendants, Plaintiff's claims against them as alleged guarantors "depend entirely on [Plaintiff] proving that ACKC is liable to [Plaintiff]." (*Id.* (citing *Overland Park Sav. & Loan Ass'n v. Miller*, 243 Kan. 730, 741, 763 P.2d

10

1092, 1100 (1988) (citing 38 Am.Jur.2d Guaranty § 74 (1968)).  This is synonymous with Defendants' inconsistent judgment argument, discussed in subsection A., *supra*.

Plaintiff responds that duplicative litigation and risk of inconsistent judgments are both "inherent in the bankruptcy system" and "the direct consequence of ACKC's forum shopping." (Doc. 23, at 10.)  Plaintiff contends that the risk of inconsistent judgments "does not constitute a clear case of hardship or inequity" because the "argument … is entirely speculative." (*Id.*)  The Court acknowledges that relying on a risk of inconsistent judgment is wholly speculative.  That stated, the entire concept of a "risk" is based on a speculation or assumption that something may occur.  The fact that this argument is speculative does not obviate the Court's concern that this result could come to fruition.

Plaintiff contends that it filed the bankruptcy "to mitigate the concern of conflicting rulings," asking the Bankruptcy Court to "allow this Court to handle the entire Adversary Proceeding." (*Id.*)  According to Plaintiff, "[t]his would ideally enable these issues to be resolved in a single forum and allow for a comprehensive resolution." (*Id.*)

Defendants point to the fact that one of their defenses requires them "to show that ACKC was damaged by [Plaintiff] and, therefore, such damages operate as a set off against any damages that may be recovered by AFL." (Doc. 19, at 7 (citing *Pawnee Petroleum Prod., LLC v. Crawford*, No. 01-1314-WEB, 2003 WL 21659665, at *3 (D. Kan. Apr. 18, 2003).)  Thus, Defendants argue that whether ACKC was damaged by Plaintiff or vice versa "is set to be resolved by the Bankruptcy Court through the Adversary Proceeding in the first instance because [Plaintiff's] claim is entirely tied to its allegation that Defendants are guarantors of certain of ACKC's contractual obligations." (*Id.*)

Defendants finally assert that a stay is warranted because they will be unduly burdened with defending and taking discovery this case "while the identical defenses are being asserted, and

11

identical discovery is being undertaken, by ACKC in the Adversary Proceeding." (*Id.*, at 8 (citing *Navistar Leasing Co. v. Tango Transport, LLC*, No. 15-866, 2017 WL 87859, at *3 (E.D. Tex. Jan. 10, 2017).) Plaintiff responds that this argument is "unconvincing." According to Plaintiff, Defendants are, in essence, arguing that "they should not have to defend themselves and incur litigation costs because ACKC, a separate entity, might do so on their behalf – at the expense of ACKC's bankruptcy estate and its creditors." (Doc. 23, at 11.) Plaintiff continues that Defendants "voluntarily assumed obligations under the Guaranties and specifically agreed [Plaintiff's] right to proceed against them was not impacted by any action involving ACKC," thus, if Defendants "choose to contest those obligations, they must do so themselves, and not behind the veil of a bankruptcy proceeding of an affiliate." (*Id.*) According to Plaintiff, "[t]he notion that [Defendants] should be relieved of this responsibility, or that it would be a burden, makes no practical sense." (*Id.*)

The Court acknowledges both the burden to Defendants and the concerns of Plaintiff. That stated, as discussed above, the Court finds that a stay is appropriate given the procedure for the Bankruptcy Court to address the adversary proceeding.

### C.     Convenience to the Court.

Defendants next argue that the present case and the adversary Proceeding "involve identical underlying facts and issues – i.e., the franchise agreements and the lease assignments, the construction of the terms of those agreements, the enforceability of such terms, the breach of such terms, resulting damages, if any, from any alleged breach, etc." (Doc. 19, at 8.) As such, Defendants argue that the adversary proceeding will "resolve controlling issues in this case." (*Id.* citing *Navistar Leasing Company v. Tango Transport, LLC*, 2017 WL 87859, at *3 (E.D. Tex. Jan 10, 2017) (holding that "a stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery").)

12

Defendants continue that "[o]nce the Adversary Proceeding has been concluded, the outcome will likely collaterally estop both [Plaintiff] and Defendants," at which point "this Court will simply be asked to apply the Bankruptcy Court's resolution of key issues between [Plaintiff] and ACKC as collateral estoppel on the claims asserted by [Plaintiff] and the defenses asserted by Defendants." (*Id.*)  A stay of these proceedings would, in Defendant's opinion, conserve judicial resources. (*Id.*)

Plaintiff counters that Defendants have failed to "offer a compelling reason why it would be more efficient for this Court to stay the case and allow the newly initiated Adversary Proceeding to proceed solely to resolve ACKC's liability, while leaving the remaining issues in this case to languish" when this case has "moved past the pleading stage" and the adversary proceeding "still in its infancy, months behind this case." (Doc. 23, at 11.)  In other words, Plaintiff asserts that it is nonsensical to pause this case only to resolve one issue in the adversary proceeding. (*Id.*)

Plaintiff argues that "[t]he most efficient path forward – and the path sought through the Bankruptcy Motions – is to consolidate the Adversary Proceeding and this case into a single action before this Court." (*Id.*)

Plaintiff also disputes Defendants' assertion that once the adversary proceeding is resolved, its outcome can be applied to determine ACKC's liability in the present matter.  Plaintiff correctly points out that Defendants have "offer[ed] no legal authority or even a clear explanation as to how the Adversary Proceeding would have preclusive effect" in this case. (*Id.*, at 11-12.)  Further, Plaintiff states that even if the Adversary Proceeding had some preclusive effect herein, "this argument overlooks that resolution of the Adversary Proceeding would not address all the issues in this case – specifically those related to the enforceability of the Guaranties." (*Id.*, at 12.)

13

Again, as discussed above, the Court finds that the concept of judicial economy is best served by allowing procedure for the Bankruptcy Court's recommendation to occur. As such, this factor weighs in favor of a stay.

### D. Non-Party Interests.

As to this factor, Defendants argue that ACKC is not a party to this litigation and "has not been made one on account of [the] pending Bankruptcy Case." (Doc. 19, at 8.) That stated, Defendants contend that the involvement of ACKC "is central to claims asserted by [Plaintiff] and the defenses asserted by Defendants" herein. (*Id.*) Defendants continue that "ACKC's creditors (other than AFL whose claim is disputed) are not parties to this case. ACKC's affirmative claims for damages against AFL, if successful, will inure to the benefit ACKC's legitimate creditors." (*Id.*, at 8-9.) Therefore, Defendants assert that ACKC's creditors have a "strong interest in having ACKC's claim against [Plaintiff] litigated first." (*Id.*, at 9.)

Plaintiff next raises concern as to Defendants' "feigned interest" in ACKC and its creditors as a basis for their requested stay in this Court. (Doc. 23, at 12.) According to Plaintiff, "[i]f the Court were to give any weight to ACKC's interest in the outcome of this litigation, it would undermine the purpose of the Guaranties, which are designed to allow [Plaintiff] to pursue [Defendants] directly in the event ACKC, as is the case here, is unable or unwilling to answer for its liabilities." (*Id.*) Thus, according to Plaintiff, "if ACKC's interest in the outcome of this litigation is given any consideration, it would effectively defeat the very purpose of the guaranties." (*Id.*)

Plaintiff also finds Defendants' concern as to the interest of ACKC's creditors to be "suspect at best … ." (*Id.*) According to Plaintiff, the interest of ACKC's creditors "surely rests in … allowing this matter to proceed against [Defendants] as quickly as possible." (*Id.*, at 13.) According to Plaintiff, "[i]f [it] prevails against and recovers from [Defendants], … then ACKC's financial liability would be reduced, ultimately increasing the potential recovery for ACKC's

14

creditors." (*Id.*)  Regardless of whether the interests of ACKC (which is not a party to the present case) would be better served by a stay, the Court has already determined that the overall interests of this case and the Court are best served by the entrance of a stay.

### E. Public Interest.

The final factor for the Court to consider is the public interest.  *Gouger*, 2020 WL 1320723, at *2.  Defendants concede that the public "has an interest in having cases resolved expeditiously and efficiently." (Doc. 19, at 9.)  Even so, according to Defendants, "any small impact to the public interest in an expeditious resolution of this case that may exist is substantially outweighed by the alleviation of significant burden to the Defendants and by the significant benefit to conservation of judicial resources if this case is stayed." (*Id.*)  Plaintiff responds that Defendants "will not face any burden if the case proceeds, and the most useful application of judicial resources is to consolidate the Adversary Proceeding with this case." (Doc. 23, at 13.)  Plaintiff continues that a stay of this case, "by definition, will result in two different matters and lingering inactivity on the court's docket, when, as another option, one proceeding stands able to resolve all issues among all involved parties – this one." (*Id.*)

The Court finds this factor does not particularly impact its determination herein.  Other than a general interest in having cases resolved "expeditiously and efficiently," there is no overriding public interest in a determination of the issues herein.

## CONCLUSION

As discussed above, the Court finds that judicial economy would be best served by staying this case pending a decision on the request to the Bankruptcy Court to withdraw the reference.  The stay will encompass the Bankruptcy Judge's written recommendation on the withdrawal of the reference to the Bankruptcy Court pursuant to D. Kan. R. 83.8.6(c) as well as any potential written objection to that recommendation from the parties pursuant to Bankr. R. 9033(b).  The stay will

continue while the District Court reviews the written recommendation and resolves the motion to withdraw the bankruptcy reference pursuant to Bankr. R. 9033(d). Thereafter, the parties are instructed to inform the undersigned Magistrate Judge, via email to chambers, within five days of the District Court's resolution of the motion to withdraw. The undersigned Magistrate Judge will then set the case for a telephone status conference wherein the parties and the Court will discuss how this case shall proceed.

    IT IS SO ORDERED.

    Dated March 11, 2025, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON  
Brooks G. Severson  
U.S. Magistrate Judge
